**Click here to Respond to Selected Documents**

**Sort Date Entries:** Descending Ascending

**Display Options:** All Entries ⌄

**12/11/2023**

    **Pet Filed in Circuit Ct**
    PLAINTIFFS CLASS ACTION PETITION.
        **Filed By:** DANIEL FRANCIS HARVATH
        **On Behalf Of:** THOMAS FELLIN
    **Note to Clerk eFiling**

        **Filed By:** DANIEL FRANCIS HARVATH
    **Filing Info Sheet eFiling**

        **Filed By:** DANIEL FRANCIS HARVATH
    **Motion Special Process Server**
    REQUEST FOR SPECIAL PROCESS SERVER FORM.

**12/12/2023**

    **Judge Assigned**
    DIV 3
    **Summons Issued-Circuit**
    Document ID: 23-SMCC-10334, for HENKEL CORPORATION Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>HEATHER RENE CUNNINGHAM | Case Number:  23SL-CC05302 |
|---|---|
| Plaintiff/Petitioner:<br>THOMAS FELLIN<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DANIEL FRANCIS HARVATH<br>PO Box 440393<br>ST LOUIS, MO  63144 |
| Defendant/Respondent:<br> HENKEL CORPORATION | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Tort | |

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to:  **HENKEL CORPORATION**
Alias:

**221 BOLIVAR ST.**
**JEFFERSON CITY, MO  65101**

*COURT SEAL OF*

*ST. LOUIS COUNTY*

       You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

<u>12-DEC-2023</u>
Date

_____
Clerk

Further Information:
AD

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____        _____
                                             Date                                      Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $    10.00 |
| Mileage | $_____ (_____miles @ $ ._____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

**IN THE CIRCUIT COURT FOR ST LOUIS COUNTY**
**MISSOURI STATE COURT**

| | | |
|---|---|---|
| **THOMAS FELLIN,** | ) | |
| *individually and on behalf of* | ) | **Case No.** |
| *all others similarly situated,* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | |
| **HENKEL CORPORATION.,** | ) | |
| **and DOES 1 through 10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Thomas Fellin, individually and on behalf of all others similarly situated, hereby files this, his Class Action Complaint, against Henkel Corporation and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting breach of warranty, breach of implied contract, and unjust enrichment, and, in the state of Missouri, violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

1.      Defendant markets and sells consumer products, including "PUREX"-branded liquid laundry detergent, packaged in 150 fl. oz. containers, and purporting to be sufficient for 115 loads of laundry (the "Product").

2.      Indeed, the claim "115 LOADS" appears prominently on the front of the Product, as shown below (magnified for clarification):

1

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM



a.



b.

3.      Although the claim "115 LOADS" is obvious to the purchasing consumer, a not-so-obvious, tiny reference point corresponds to fine-print on the rear side of the product revealing that consumers get nowhere close to enough product for 115 loads of laundry.

4.      In other words, the fine-print on the rear of the Product, unbeknownst to the consumer, severely undercuts the 115 load claim on the front side.   The instructions on the back, while ultimately revealing that the front-side "115 loads" claim is false, do so in subtle and obtuse fashion, in a manner that the vast majority of consumers will not understand when purchasing the Product under any circumstances, and certainly not as they rush through a convenience or grocery store.

2

5.      This is especially true here, as unraveling the falsity of the Products' claim requires multiple steps.  To begin with, the "reference point" – the *tiny* asterisk symbol following the "115 Loads" claim is so small that the overwhelming majority of consumers would not notice it in the first place, giving them no reason to even explore the rear of the Product.

6.      Even worse, the white-lettered asterisk is placed deceptively within the very beginning of the white-and-gray-colored "snowy mountain" artwork appearing on the label.  This specific placement renders the asterisk even less noticeable than it otherwise might be to a consumer rushing through a grocery store.

a. 

7.      Nonetheless, the asterisk-shaped mark is meant to correspond to fine-print on the backside of the container, which is covered in fine-print of varying sizes, all of which is difficult to read:



a.

8.      Magnified, the bottom portion of the rear label appears as follows:

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM



9.      As is apparent, even magnified, it is still extremely difficult for a consumer to spot the first clue that the front-side claims are false.

10.      Amongst the fine-print on the rear of the container is an obscure notation beginning with the asterisk-shaped-mark from the other side:



     a.

11.      The asterisk precedes the statement: "*Medium Loads"

12.      Obviously, this is alone not illuminating for a consumer, as the consumer still has no idea just what a "medium load" corresponds to.  The consumer must read another section of the label, which states as follows:

**For best results:** Follow washing machine instructions for adding detergent. For medium loads, fill cap to just below line 1 (1.3oz) Use more for heavily soiled or large loads.
**For Tough Stains:** Pretreat by applying some detergent directly to stain and rub into fabric. Allow formula to sit on stains for 5 minutes. For added power, use ¾ cap of detergent in wash.

13.      As shown, the rear label states: "For best results: Follow washing instructions for adding detergent.  For medium loads, fill cap to just below line 1 (1.3oz).  Use more for heavily soiled or *large loads*." (emphasis added).

4

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

14.     Because a laundry washing machine cannot be filled beyond full capacity, "large" loads, as the Product employs the term, must refer to loads of laundry that are significantly fuller than what the Product labels "medium" loads of laundry.

15.     In other words, what the Product labels "medium" loads are significantly less than a full load of laundry, and thus significantly less than what consumers expect.

16.     While that much is clear, another aspect of the Product renders it even more confusing and misleading.  The measuring-cup cap included with each Product lacks any clear "line" on either the inside or outside.

a.     

17.     The only markings are on the *inside* of the measuring cup, and are barely legible. Notably, a consumer cannot even see these lines without having to remove the measuring cup, something generally prohibited in most stores and otherwise frowned upon.  Indeed, removing the cap prior to purchasing the Product is something the vast majority of consumers will not do.

18.     Consequently, most consumers have **no way at all** to accurately gauge how much detergent they are receiving when making the purchase.

19.     Upon removing the measuring cap and carefully scrutinizing the inside, one can see both a "1" and a "2" measuring bar (the marks are confusingly not "lines"):

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM



a.

20.    Based on these markings, and based upon the unified similar instructions of multiple other detergent products manufactured and sold by Defendant, if enough detergent to reach "line 1" is required for a "medium" load, then a full load (as the consumer interprets that term) would require at least enough detergent to reach "line 2."  Indeed, unless "line 2" corresponds to a full (or a "large") load, it has no function but to further confuse and deceive the consumer.

21.    Only by going through each step of the above-described analysis can a consumer finally get an accurate idea of just how much Product they are purchasing.

22.    Indeed, to determine what amount of detergent they are purchasing, the consumer must read at least four separate instructions located in various spots in and around the Product's packaging (and, in at least one instance, virtually hidden from the consumer), and then mentally combine each of those disparate instructions.

23.    To the extent a consumer can follow the textual "clues" riddled across the Product's container, they learn that the amount of detergent in the container is only sufficient for "115 LOADS" if a "load" is a so-called "medium" load, something that is multiple steps down from the full loads consumer expects, and which requires less than half the detergent needed for a full load.  In other words, a consumer can discern that they are only getting enough detergent for 115 *half*-loads of laundry.

24.    Consequently, a consumer would need at least 300 fluid ounces (fl. oz.) to effectively wash 115 full loads of laundry (what the Product labels "full" loads).  However, despite this, the Product

6

Electronically Filed - ST. LOUIS COUNTY - December 11, 2023 - 03:58 PM

only provides a consumer with 150 fl. oz. of detergent, or just approximately 50% of the amount of detergent that the Product itself indicates is necessary for 115 full loads of laundry.

25.     Because consumers – for the numerous reasons set forth *infra* – expect full loads of laundry when seeing the term "load" (instead of half-loads) – consumers are being cheated out of at least 50% of what they expect, based on Defendant's own measurements.

26.     For the vast majority of consumers doing full loads of laundry, the most loads the Product provides detergent for is approximately 60 or less, not 115.

27.     In any and all instances, the Product provides detergent for nowhere close to 115 loads. And, even worse, it is only by turning the Product over, navigating a multi-step maze of fine-print, ***and removing the cap of the product*** that a consumer can possibly discern this fact.  It is obviously unreasonable to expect such a thorough examination by any consumer; the majority will not even remove the cap, feeling prohibited from doing so.

28.     For all these reasons – and those set forth further below – representing that the Product can provide detergent for "115 LOADS," is misleading and deceptive.

29.     Pursuant to the MMPA, such practice is illegal.

30.     In addition, and/or in the alternative to the above, since the initial offering of the Products, each and every container of the Products has borne a uniformly-worded label falsely claiming the Product provides for "115 Loads."  That uniformly-worded false statement gives rise to additional and/or alternative claims under Missouri law.

## I.     PARTIES, JURISDICTION, AND VENUE

31.     Plaintiff Thomas Fellin is a citizen and resident of St. Louis County, Missouri.

32.     Plaintiff brings this Class Action Complaint individually and on behalf of a putative class of Missouri residents, and/or a putative subclass of consumers from certain states, the "Consumer Protection Subclass."

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

33.     Defendant Henkel Corporation ("Henkel") is a Germany-based foreign corporation having its principal place of business in the United States at Samford, CT. Henkel may be served through its registered agent located at 221 Bolivar St., Jefferson City, MO 65101.

34.     The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

35.     Defendants, directly and through their agents, have substantial contacts with, and receive substantial benefits and income from and through the State of Missouri.  Defendants are the owners, manufacturers, and distributors of the Products, and the entities that created and/or authorized the false, misleading, and deceptive packaging of the Products.

36.     Venue is proper in this Court because Plaintiff was injured in this venue and lives within this venue.

37.     This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA.  Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable.  This action raises questions of law and fact common among Plaintiffs.  The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

38.     <u>Class definitions</u>:  Plaintiff brings this action on behalf of Plaintiff and a class of similarly-situated persons preliminarily-[1]defined as follows: All persons who purchased the Products[2]

---

[1] Plaintiff reserves the right to propose, as needed, any different or other more- or less-specific class, classes, subclass, or subclasses as Plaintiff deems appropriate for purposes of class certification.

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

during the Class Period while in one of the specific states having consumer protection statutes materially-identical to the MMPA: Illinois, Maryland, Hawaii, New York, Washington D.C., Rhode Island, Vermont, Washington, and Connecticut ("Consumer Protection States").  In addition, and/or alternatively, Plaintiff brings this action on behalf of herself and a Missouri subclass of similarly-situated persons defined as follows: All persons, who, within the Class Period, purchased the Products in the State of Missouri.  The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

39.    <u>Numerosity</u>:  Upon information and belief, the Class and Subclass includes at least tens-of-thousands of individuals on a multiple-state basis, making their individual joinder impracticable. Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

---

Included within this reservation is a potential subclass of those citizens in those states having consumer protection laws materially-similar to the MMPA: Illinois, Maryland, Hawaii, New York, Washington D.C., Rhode Island, Vermont, Washington, and Connecticut ("Consumer Protection Subclass").  Each state therein has a consumer protection statute that broadly prohibits deceptive conduct; likewise, no state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Thus, Defendant's conduct alleged herein violates each statute's shared prohibitions.

[2] As that term and label is defined herein.

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

40.     <u>Typicality</u>: Plaintiff's claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive marketing and advertising in offering and selling the Products to Plaintiffs.

41.     <u>Adequacy</u>:    Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent and experienced counsel, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

42.     <u>Commonality</u>:    Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Products; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

43.     <u>Superiority</u>:    This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct.  Thus, it would be extremely difficult for the individual Class members to obtain effective relief.  A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

**<u>PLAINTIFF'S CLAIMS</u>**

44.     For all the aforementioned reasons, the Product's "115 LOADS" statement is false, misleading and deceptive, all in violation of the Missouri Merchandising Practice Act, and various other Missouri and similar–state consumer laws.

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

45.    Average and reasonable consumers such as Plaintiff generally do not read the fine print on the rear of a package when purchasing a Product.

46.    Plaintiff and other consumers purchased the Products due to their belief that the Product would provide enough fabric detergent for approximately 115 loads of laundry.

47.    Plaintiff and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that the Products provide "115 LOADS."

48.    Plaintiff and the Class reasonably and detrimentally relied upon the Products' front labels in this respect.

49.    This is especially true in light of the fact that the average consumer spends less than 20 seconds making any individual in-store purchasing decision.[3]

50.    Indeed, most consumers shop in a relatively hurried fashion, and cannot stop to closely analyze every single product to decipher every deception.[4]  For these additional reasons, the confusing fine-print on the rear of the Product is even more unlikely to clue-in a consumer to the deception on the front label.

51.    Under these circumstances, the prominent, attention-grabbing "front-of-the-box" claim that the Product is sufficient for "115 LOADS" is not negated – especially in the mind of a harried consumer rushing through their shopping routine – by the fine-print maze of citations on the rear of the Product.

---

[3] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-windown/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited May 14, 2023).

[4] *See, e.g., Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 481 (7th Cir. 2020) (stressing that reasonable consumers, in purchasing "everyday" items such as "low-cost groceries," are likely to exhibit a low degree of care); *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures . . . . Nor does the law expect this of the reasonable consumer.").

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

52.     Plaintiff and the Class would not have purchased the Products had they known that the Products do not provide anywhere close to the 115 full loads that a reasonable consumer would expect.

***Countless Factors Illustrate Consumers Expect "Load" to Refer to a Full Unit***

53.     Consumers understand the term "loads" in the laundry context as referring to *full* units, not half-units, similar to consumers' understanding of other units of measurement, such as meters, liters, grams, feet, ounces and pounds.  If a product was sold as containing 115 "ounces" of something, a consumer would not expect 115 half-ounces of that something. Similarly, a consumer here expects enough detergent to treat 115 full loads, not 115 half-loads (what Defendant labels "medium" loads).

54.     This same understanding recently was confirmed by the United States Department of Energy ("DOE").  In analyzing the potential of energy conservation in the usage of residential laundry machines, the DOE based its energy-use calculations on "full capacity, large loads of wash."[5]  That determination was based on the fact that, *inter alia,* "unpublished data from Procter & Gamble indicates that North American households prefer large size loads (43%) over very large or medium loads (21% each)."  The "small and very small loads" – which are equivalent to what Defendant proposes is a "load" – constitute "less than 10% of total washes." *Id.* In other words, this data reveals that the overwhelming majority of consumers *do not expect* the medium- to small-sized partial loads that Defendant provides detergent for to its consumers; the overwhelming majority of consumers expect and prefer "loads" that are full.

55.     Moreover, the above-referenced study, along with others like it, illustrates that the term "load" is consistently used and referred to as referencing the whole usable capacity of the clothes washer

---

[5] Sabaliunas, Darius, et al. "Residential energy use and potential conservation through reduced laundering temperatures in the United States and Canada." Integrated Environmental Assessment and Management:    An    International    Journal    2.2    (2006):    142-153,    *available at*:  https://setac.onlinelibrary.wiley.com/doi/full/10.1002/ieam.5630020206

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

when employed in all other scientific and governmental studies.[6]

56.    As an additional example of the United States federal government employing the term "load" in the laundry context to mean the full usable laundry container, the DOE's "Uniform Test Method for Measuring the Energy Consumption of Automatic and Semi-automatic Clothes Washers" is instructive.[7]   In an Appendix to the Uniform Test, the test measurement of "clothes container capacity," is determined by "measuring the *entire volume that a clothes load could occupy within the clothes container* during [washing process]." *Id.,* at § 3.1 (emphasis added).   In other words, a "load," equates to the "entire volume … that a clothes load could occupy."    Nowhere is it even implied that a "load" equates to, for instance, *half of* the volume that a clothes load could occupy.  Clearly, the United States government, specifically the Department of Energy, consistently and repeatedly refers to a load of laundry as relating to a *full clothes container*, not to the half-or-less "loads" the Product is sufficient to wash.

57.    Consistent with the above, the DOE not surprisingly recommends that consumers "fill [the clothes container] up," and "wash full loads" in order to save energy.[8]

58.    Indeed, consumer laundry habits favoring larger loads has increased even further over the past ten years, as consumers have become more aware of the effects of energy consumption on climate change.

59.    CNN surveyed laundry and environmental experts, who recommend that Americans "save up [their] dirty clothes and wash them in a few big loads versus several smaller loads" to mitigate

---

[6] *See, e.g.,* Sabaliunas, *supra; see also,* Golden, Jay S., et. al. "Energy and carbon impact from residential laundry in the United States." Journal of Integrative Environmental Sciences 7.1 (2010): 53-73; *available at* : https://www.tandfonline.com/doi/full/10.1080/19438150903541873

[7] DOE's Appendix J2 to Subpart B of Part 430 - Uniform Test Method for Measuring the Energy Consumption of Automatic and Semi-automatic Clothes Washers, available at: https://www.law.cornell.edu/cfr/text/10/appendix-J2_to_subpart_B_of_part_430

[8] DOE, (energy.gov publication) 16 Ways to Save Money in the Laundry Room, available at: https://www.energy.gov/energysaver/articles/16-ways-save-money-laundry-room

13

the environmental impact.[9]

60.     In addition, the experts recognize that "washing machines are more efficient when they run at full capacity," and therefore recommend to consumers to "save up [] dirty clothes and wash them in a few big loads versus several smaller loads."[10]  This is the experience of most consumers, as saving energy (and related costs) is a priority to nearly everyone.   This reality further bolsters the consumers' expectation that a "load" of laundry is one that fills or nearly fills the clothes container, not half or less of the container.

61.     Indeed, that expectation grows ever more strongly due to other societal factors.  For instance, the United States economy has suffered severe inflation over the past few years.[11]  Consequently, it is logical to believe consumers, in the interest of saving money on energy and water usage – will *even more strongly* prefer full laundry loads.

62.     According to a nationwide survey conducted in 2017, "four out of five consumers intentionally overload their washing machine."[12]   Not only do consumers prefer full loads, approximately 80% use oversized loads.  "Additionally, out of the more than 1,000 Americans ages 18 and over who participated in the survey commissioned by LG Electronics USA, ***nearly all*** (93 percent) admit they mixed the items just to avoid a second load of laundry."  This trend further bolsters the consumers' expectation of a full container when referring to a "load" of laundry.

63.     Perhaps most convincing of all that Defendant is not meeting the average consumer's expectation is the fact that Defendants' competitors prominently disclose upfront to the consumer that

_____

[9] Leah Kirts, <u>How to wash laundry sustainably, according to experts</u>, CNN Underscored, August 23, 2022, available at:   https://www.cnn.com/cnn-underscored/home/how-to-wash-laundry-sustainably
[10] *Id.*
[11] *See, e.g.,* Chris Isidore, <u>This is the worst inflation in nearly 40 years</u>. CNN Business, available at: <u>https://www.cnn.com/2022/01/11/economy/inflation-history/index.html</u>
[12] PR NewsWire; LG Electronics USA. <u>New Survey Reveals Consumers Will do Almost Anything to Avoid Doing a Second Load of Laundry,</u>  available at:  <u>https://www.prnewswire.com/news-releases/new-survey-reveals-us-consumers-will-do-almost-anything-to-avoid-doing-a-second-load-of-laundry-300480341.html</u>

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

the amount of detergent recommend by Defendant equates only to a "small load," (or half-load) as the average consumer expects.

64.    One of the best examples of this fact is Colgate-Palmolive's "Sauvitel" fabric softener



product, which appears as follows:

65.    When it comes to the amount of product within the container, Sauvitel states upfront that



it provides for "135 *small* loads":

66.    Importantly, Defendant's competitors disclose upfront what Defendant hides on the back of the product, in a maze of fine-print and *under the cap.*

67.    On the rear side of the Suavitel product, the packaging illustrates the amount of liquid



required for a "small load," illustrating the same with a diagram:

68.    Notably, the "small load" amount recommended by the Sauvitel product is roughly equivalent to the "Line 1," that the Product recommends for so-called "medium" loads.

69.    Thus, Defendant's portrayal to consumers of what it uniquely considers a "medium load" is equivalent to what Defendant's competitor acknowledges is a "small load."

70.    In prominently warning consumers that the claimed amount of product is based on "small

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

loads," Defendants' competitors not only illustrate how easy it is to *not* mislead consumers in this fashion, but is a clear recognition of consumers' susceptibility to be misled in the absence of such clarification.

71.     In other words, Defendant's competitors specifically acknowledge that consumers are misled by Defendant's exact approach here.

72.     The fact that Defendant's competitors openly disclose that their claimed amount of solution is based on "small loads" is just one more of multiple factors illustrating that consumers expect enough product for *full* loads of laundry, not the half-loads Defendant in fact provides (while attempting to conceal that fact from consumers).

73.     For all of the above–stated reasons, and more, it is clear that the overwhelming majority of consumers expect and prefer "loads" of laundry that are at, or at least near, the full capacity of the laundry machine, not the half-load sizes that Defendant actually provides detergent for.

74.     Defendant's conduct threatens Missouri consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

75.     There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual amount of the Product being purchased by consumers, while simultaneously providing Defendant with a financial windfall

### *Allegations Relating to All Plaintiffs*

76.     As noted, *supra,* since the initial offering of the Products, the containers on the front packaging of all of the Products has borne one or more uniformly-worded labels falsely claiming the Product provides enough detergent for "115 LOADS" (hereinafter "False Claims").

77.     In reality, for all the reasons set forth *supra,* a reasonable consumer would find that the

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

False Claims are false, misleading, unfair, and/or deceptive.

78.    Defendant, as developer, manufacturer, and exclusive seller and distributor of the Products, has been aware since the Products' inception, that the False Claims are in fact false.

79.    Indeed, Defendant undoubtedly did its own investigation of the Products and its marketplace prior to it being offered for sale and, of necessity, such investigation would have made Defendant aware that the False Claims are in fact false.

80.    Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a Product that would be enough for 115 loads of laundry.

81.    Plaintiff and the class members purchased the Products without being aware that the Products do not, in fact, provide enough detergent for anywhere near 115 loads of laundry.

82.    Defendant possessed specialized knowledge regarding the data and information concerning the amount of the Products and its claims.

83.    In fact, in regard to the False Claims, the Product is a credence good because its purported "115 LOADS" label cannot be independently verified by the consumer at the time of purchase.

84.    In purchasing the Products, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

85.    Had Plaintiff known that the False Claims were false, Plaintiff would not have purchased the Products or would not have paid as much for the Products.

86.    If, at some point in the future, the Product was improved to provide for "115 LOADS" and/or otherwise be accurately labeled, Plaintiffs intend to, and will purchase the Products again.

87.    As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

88.     By marketing, selling and distributing the Product to purchasers in Missouri and elsewhere, Defendant made actionable statements that the Products provided for "115 LOADS."

89.     Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

90.     Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

91.     As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendant possessed specialized knowledge regarding the data and information concerning the amount of Product which the Plaintiff and the class members could not and did not review.

*Facts Particular to Plaintiff Thomas Fellin*

92.     In or around September 21, 2023, Plaintiff purchased the Product from a third-party retailer, Walgreens, located at 1 Grasso Plaza, St. Louis, Missouri, 63123.

93.     Due to the claims on the packaging, Plaintiff falsely believed he was purchasing a product that would provide enough detergent for 115 full loads of laundry.

94.     Plaintiff thereafter purchased the Product.  Plaintiff purchased the Product primarily for Plaintiff's personal, family and household use.

95.     At the time Plaintiff purchased the Product, Plaintiff was unaware of the falsity of the Products' claims.

96.     Plaintiff discovered that such claims were false shortly after purchasing and using the Product, which Plaintiff used properly and according to its instructions in every respect.

97.     If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, Plaintiff would not have bought the Product.

98.     When Plaintiff purchased the Product, Plaintiff was injured by Defendant's illegally

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

deceptive, false, and misleading conduct in marketing and selling the Product.

99.     Specifically, Plaintiff suffered an ascertainable loss because Plaintiff did not receive the expected benefit of the bargain.

100.     When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that Plaintiff was receiving a product that provided for 115 loads of laundry.

101.     The Product was not what it was purported to be.  Plaintiff did not receive the value of what Plaintiff bargained for; instead Plaintiff received a product that did not live up to one of its most-prominently advertised benefits – the usable amount of Product.  Plaintiff was entirely unable to wash 115 full loads of laundry with the amount of detergent actually in the Product.

102.     Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Product as represented – as one that provided enough detergent for "115 loads" and the actual value of the Products.  Said difference for most Plaintiffs would therefore be a percentage of the price paid for the Product.

103.     Plaintiff desires to, and will purchase the Products again if they are honestly-labeled in respect to the amount of full loads, but faces an imminent threat of harm because Plaintiff will not be able to rely on Defendant's labels in the future (without relief) and will thus be unable to purchase the Products.

104.     Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed Class, all that is relevant is that Plaintiff and the class members purchased the Products at a time within the Class Period while in Missouri and/or one of the Consumer Protection States.

## CAUSES OF ACTION

## COUNTS RELATING TO THE MISSOURI AND CONSUMER PROTECTION SUBCLASSES

## COUNT ONE: BREACH OF WARRANTY

105.     Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

preceding paragraph of this Class Action Petition.

106.    Defendant sold the Product in its regular course of business.  Plaintiff and the class members purchased the Product.

107.    Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims.

108.    The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

109.    Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

110.    Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law and the laws of the Consumer Protection States.

111.    Defendant breached the warranty because the False Claims were false; the Product does not contain enough detergent to wash 115 loads, and Plaintiff was unable to wash anywhere close to the 115 loads advertised.

112.    The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

113.    All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

114.    Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

115.    Specifically, Defendant received written notice of this breach of warranty from previous consumers, yet Defendant has not meaningfully responded, and has taken no action to remedy its breach of express and implied warranty.

20

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

116.     In addition, Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, inter alia, Defendant's knowledge of the Product.

117.     Defendant has nonetheless refused to remedy such breaches.

118.     By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

119.     Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid.  As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

## COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW

120.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

121.     By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

122.     By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

123.     By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

124.     As stated, despite claiming to provide enough detergent for "115 Loads," Plaintiff was unable to wash anywhere near that amount of loads.  No consumer would be able to wash 115 loads of laundry – as that term is consistently understood by the federal government, academia, and all consumers – with the amount of detergent the Product provides.

125.     As a result of that breach, Plaintiff and each class member suffered damages.

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

## COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW

126.    Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

127.    Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

128.    Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

129.    By purchasing the Product, Plaintiff conferred a benefit upon Defendant in that Defendant ultimately received funds from the transaction, initially provided by Plaintiff.

130.    Upon information and belief, Defendant directly profits from Plaintiff's purchase in such a manner.

131.    Accordingly, Defendant was unjustly enriched by Plaintiff and those similarly-situated.

## COUNT FOUR: VIOLATION OF THE MMPA & OTHER CONSUMER PROTECTION LAWS

132.    Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

133.    Defendant's acts complained of herein occurred in and emanated from the State of Missouri and/or one of the Consumer Protection States.

134.    Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

135.    As set out in this Petition, Defendant's marketing and sale of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").  The statement "115 LOADS" is false, deceptive, and misleading; and Defendant's overall practice is certainly "unfair."

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

136.     As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing would provide enough detergent for 115 loads of laundry.

137.     In being misled in the manner described herein, Plaintiff was at all times acting as a reasonable consumer would in light of the circumstances.

138.     The deceptive practice Defendant engaged in would cause a reasonable person to enter the transaction described herein, which resulted in damages to Plaintiff.

139.     Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA.  The amount of product a consumer was cheated out of can be calculated with a high degree of certainty; and, accordingly, damages can be proven with objective and sufficiently definitive evidence.

140.     Due to Defendant's illegal conduct, Plaintiffs are entitled to restitution of all funds improperly obtained by Defendants.

141.     Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

142.     For all of the same reasons set forth above, Defendants' conduct also violates the materially-similar consumer protection laws of the Consumer Protection Subclass:

        a.   Illinois:  815 ILCS § 501/1, *et. seq.*

        b.   Maryland: Md. Code Ann. Com. Law, § 13-301, *et. seq.*

        c.   Hawaii: Haw. Rev. Stat. § 480-2, *et. seq.*

        d.   New York: N.Y. Gen. Bus. Law § 349, *et. seq.*

        e.   Washington D.C.: D.C. Code § 28-3901, *et. seq.*

        f.   Rhode Island: R.I. Gen. Laws § 6-13..1- 5.2(B), *et. seq.*

        g.   Vermont: 9 V.S.A. § 2451, *et. seq.*

        h.   Washington: Wash. Rev. Code § 19.86.010, *et. seq.*

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

        i.   Connecticut: Conn. Gen. Stat. Ann. §§ 42-110, *et. seq.*

("Consumer Protection Statutes")

143.    Accordingly, just as the MMPA has been violated by Defendant as alleged herein, each of the above Consumer Protection Statutes, all materially-similar to the MMPA, have also been violated by Defendants.

144.    Each of these Statutes is materially similar to the MMPA. Each broadly prohibits deceptive conduct in connection with the sale of goods to consumers. No state requires proof of individualized reliance, or proof of Defendant's knowledge or intent. Instead, it is sufficient that the deceptive conduct is misleading to reasonable consumers and that the conduct proximately caused harm. Defendant's conduct violates each statute's shared prohibitions.

145.    Plaintiff hereby re-incorporates herein the preceding facts that satisfy all of the various elements of each of the Consumer Protection Statutes.

146.    Each of the Consumer Protection Statutes prohibits unfair, unconscionable, and/or deceptive acts or practices in the course of trade or commerce or in connection with the sales of goods or services to consumers.  Defendant's conduct violates each statute's prohibitions

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as a Nationwide Class, Consumer Protection Subclass and/or Missouri Subclass class action, and appointing Plaintiff as Class and/or Subclass representative and his counsel as class and/or subclass counsel.  Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned nationwide common law claims; and/or violated the MMPA and/or the Consumer Protection Statutes, and award Plaintiff compensatory damages, restitution, punitive damages, and attorneys' fees, and such further relief as the Court deems just, including injunctive relief

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

25

**23SL-CC05302**

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

**In the**

# CIRCUIT COURT
**Of St. Louis County, Missouri**

_December 11, 2023_
Date

_THOMAS FELLIN_
Plaintiff/Petitioner

_____
Case Number

vs.

_____
Division

_HENKEL CORPORATION_
Defendant/Respondent

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now _PLAINTIFF THOMAS FELLIN_, pursuant
 Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
_Joshua Lee/ Agent of Evolution Process Srvs 5333 N. Tacoma, Indianapolis, IN 46220 317-362-0316_
Name of Process Server                          Address                                      Telephone

_____   _____   _____
Name of Process Server                  Address or in the Alternative                  Telephone

_____   _____   _____
Name of Process Server                  Address or in the Alternative                  Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties. This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:

_HENKEL CORPORATION_
Name

_221 Bolivar St._
Address

_Jefferson City, MO 65101_
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk

By _____
     Deputy Clerk

_____
Date

_/s/ Daniel F. Harvath_
Signature of Attorney/Plaintiff/Petitioner

_MO # 57599_
Bar No.

_75 W. Lockwood, Webster Groves, M0 63119_
Address

_(314) 550-3717_
Phone No.                                          Fax No.

CCADM62-WS   Rev. 07/19

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

**23SL-CC05302**

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

## In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

December 11, 2023
Date

_THOMAS FELLIN_
Plaintiff/Petitioner

Case Number

vs.

Division

_HENKEL CORPORATION_
Defendant/Respondent

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now _PLAINTIFF THOMAS FELLIN_, pursuant
                        Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
_Joshua Lee/ Agent of Evolution Process Srvs 5333 N. Tacoma, Indianapolis, IN 46220 317-362-0316_
Name of Process Server          Address                                    Telephone

Name of Process Server          Address or in the Alternative              Telephone

Name of Process Server          Address or in the Alternative              Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                          SERVE:
_HENKEL CORPORATION_
Name                                            Name

_221 Bolivar St._
Address                                         Address

_Jefferson City, MO 65101_
City/State/Zip                                  City/State/Zip

SERVE:                                          SERVE:

Name                                            Name

Address                                         Address

City/State/Zip                                  City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

_/s/ Daniel F. Harvath_
Signature of Attorney/Plaintiff/Petitioner
_MO # 57599_
Bar No.

By _/S/ Adam Dockery_
     Deputy Clerk
_75 W. Lockwood, Webster Groves, M0 63119_
Address

_12/12/2023_
Date
_(314) 550-3717_
Phone No.                                       Fax No.

CCADM62-WS   Rev. 07/19

Electronically Filed - ST LOUIS COUNTY - December 11, 2023 - 03:58 PM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://wp.stlcountycourts.com > forms.

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.